UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CASE NO. 1:24-cv-88-GNS

NATIONAL INDEMNITY COMPANY                                              PLAINTIFF

V.

SHUFFETTS DAY ADULT DAY CARE INC. d/b/a
EDMONTON ADULT DAY HEALTH

Serve:  Elizabeth Ann Shuffett, Registered Agent
          104 Hill Street
          Edmonton, Ky 42129

LAUREN STINSON

Serve:  Lauren Stinson
          325 Zoe Drive
          Glasgow, KY 42141

JALLEEM BAILEY

Serve:  Jalleem Bailey
          619 S. Franklin St.
          Glasgow, KY 42141                                              DEFENDANTS

---

**DECLARATORY JUDGMENT COMPLAINT**
*[Filed Electronically]*

---

For its Complaint for Declaratory Judgment, the Plaintiff National Indemnity Company ("NICO"), hereby states and alleges as follows:

**Parties, Jurisdiction and Venue**

1. Plaintiff NICO is an insurance company which was incorporated in Nebraska and whose principal place of business is in Omaha, Nebraska. Pursuant to 28 U.S.C. § 1332(c)(1), NICO is thus a citizen of the state of Nebraska

2. Defendant Shuffetts Day Adult Day Care, Inc., d/b/a Edmonton Adult Day Health (hereinafter "Shuffets") is incorporated in Kentucky and operates an adult day care facility in Barren County, Kentucky. It is a citizen of Kentucky.

3. Defendant Jalleem Bailey (hereinafter "Bailey") is an individual residing in Barren County, Kentucky. He is a citizen of Kentucky.

4. Defendant Lauren Stinson (hereinafter "Stinson") is an individual residing in Barren County, Kentucky. She is a citizen of Kentucky.

5. Consistent with 28 U.S.C. § 1332(a)(1), this Court has jurisdiction over the parties as there is complete diversity of citizenship among them and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

6. Consistent with 28 U.S.C. § 1391(b)(1)-(2), this Court is the appropriate venue for this action as the named defendants reside in Barren County, Kentucky and it arises from events which took place in Barren County, Kentucky. This Court is the division assigned to Barren County, Kentucky disputes pending before this Court.

7. Pursuant to and consistent with 28 U.S.C. § 2201(a), Plaintiff NICO herein files the instant Complaint seeking a declaration as to the existence or non-existence of coverage under the Commercial Liability Policy No. 70APS091774-04 ("the Policy") which NICO issued to Shuffetts for certain claims Bailey has made against Shuffetts and Stinson in a case styled *Jalleen Bailey v. Lauren Stinson et al.,* Civil Action No. 23-CI-00549, Barren Circuit Court ("the Tort Action"). (A copy of the First Amended Complaint in the Tort Action is attached as **Exh. 1**).

## The Tort Action

8. In the First Amended Complaint in the Tort Action, Bailey contends that 1) on or about August 25, 2023 the individual Defendant Stinson was acting in the course and scope of her

employment with Shuffetts when the motor vehicle she was driving negligently collided with Bailey and the motorcycle he was driving causing the latter to suffer bodily injuries and other damages; and 2) that Shuffetts is both vicariously and directly liable for Stinson's negligence and/or its own negligence which Bailey contends were the causes of the accident and his injuries. (*See* **Exh. 1** at ¶¶ 39-43).

## The Pertinent Accident Facts

9. In the Complaint, Bailey alleges that "[a]t the time of this crash, Stinson was acting as an agent, servant and/or employee of Shuffetts"; was "working with a client of Shuffett's and running an errand for that client"; and "was within the course and scope of her employment or agency and in furtherance of the interests of Shuffett's" which he contends renders Shuffett's "liable for Stinson's conduct in causing this crash and liable for all damages that Jalleem sustained as a result of the crash." (*Id.* at ¶¶ 36-39). Bailey also alleges direct negligence against Shuffetts's for allegedly "failing to properly hire, train and supervise Stinson in the operation of a motor vehicle, while performing work for Shuffett's." (*Id.* at ¶ 40).

10. As evidenced in the relevant police report, at the time of the August 25, 2023 accident with Bailey, Stinson was driving her own personal vehicle - a 2021 Chevrolet Blazer – VIN 3GNKBCRS5MS531127. . (*See* Police Report, attached as **Exh. 2**).

## The Policy and Claims for Coverage

11. NICO assumed the defense of Defendants Shuffetts and Stinson in the Tort Action under a complete reservation of NICO's rights, including the right to seek a declaration that NICO has no duty to defend or indemnity Defendants under the Policy. Stinson is also being defended by her personal automobile carrier.

12. The Policy was in effect for the Policy Period of April 11, 2023 to April 11, 2024.

The Business Auto Coverage Form of the Policy states in relevant part:

**SECTION I – COVERED AUTOS**

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

**A.   Description of Covered Auto Designation Symbols**

| Symbol | | Description of Covered Auto Designation Symbols |
|---|---|---|
| … | | |
| 7 | Specifically Described "Autos" | Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (and for Liability Coverage any "trailers" you don't own while attached to a power unit described in Item Three) |
| … | | |

**B.   Owned Autos You Acquire After the Policy Begins**

1. If Symbols **1, 2, 3, 4, 5, 6 or 19** are entered next to a coverage in Item Two of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy period.

2. But, if Symbol **7** is entered next to a coverage in Item Two of the Declarations, any "auto" you acquire will be a covered "auto" for that coverage only if:

    a. We already cover all "autos" you own for that coverage, or it replaces an "auto" you previously owned that had that coverage; and

    b. You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

**C.   Certain Trailers, Mobile Equipment and Temporary Substitute Autos**

If Covered Autos Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Covered Autos Liability Coverage:

…

    3. Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:
        a. Breakdown;
        b. Repair;
        c. Servicing;
        d. "Loss"; or
        e. Destruction.

## SECTION II – LIABILITY COVERAGE

    **A.    Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."
…

We have the right and duty to defend any "insured" against a "suit" asking for such damages…. However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage"…to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Covered Autos Liability Coverage Limit of insurance has been exhausted by payment of judgments or settlements.

    1.    **Who is an Insured**

The following are "insureds":
a. You for any covered "auto";
b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

    (1) The owner or anyone else from who you hire or borrow a covered "auto"….
    (2) Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.
    …

c. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

…

## SECTION V – DEFINITIONS

    A.    "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

    B.    "Auto" means:

        1.    A land motor vehicle, "trailer" or semitrailer designed for travel on public roads;
        2.    Any other land vehicle that is subject to compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged…

    C.    "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these.

…

    F.    "Employee" includes a "leased worker." "Employee" does not include a "temporary worker."

    G.    "Insured" means any person or organization qualifying as an insured in the Who is an Insured provision in the applicable coverage…

…

    J.    "Loss" means direct and accidental loss or damage.

…

    N.    "Suit" means a civil proceeding in which:

        1.    Damages because of "bodily injury" or "property damage"…

    to which this insurance applies…

    "Suit" includes:

        a.    An arbitration proceeding in which such damages…are claimed and to which the "insured" must submit or does submit with our consent;
        b.    Any other alternative dispute resolution proceeding in which such damages…are claimed and to which the insured submits with our consent.

…

(*See* Policy, attached as **Exh. 3** at pp. 1-3, 10-12 of 12). "You" is further defined to mean named insured Shuffetts Adult Day Care, Inc.

6

13. Item Two of the Business Auto Coverage Declarations for the Policy contains a Schedule of Coverages and Covered Autos. The Schedule of Covered Autos lists two vehicles: a 2006 Chrysler Town and Country and a 2017 Nissan Altima. (*See* Policy Declarations, Item Two, attached hereto separately as **Exh. 4**).

14. The 2021 Chevrolet Blazer driven by Stinson at the time of the accident was her own personal vehicle insured by another carrier, and it is not a "covered auto" specifically described and listed in the Schedule of Covered Autos of the Policy.

15. Stinson's vehicle was also not a newly acquired, replacement or temporary substitute vehicle as those terms are specifically described in Section 1, Paragraphs B and C of the Policy.

16. Section II of the Policy limits liability coverage thereunder to those claims in which an "insured" "legally must pay as damages "because of "bodily injury" or "property damage to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."

17. As such, NICO has no duty to defend or indemnify either Shuffetts or Stinson or to pay Bailey on account of Bailey's claims and/or the Tort Action because Bailey's alleged damages did not result "from the ownership, maintenance or use of a covered 'auto'".

18. For that reason, while NICO has assumed the defense of its insured Shuffetts in the Tort Action, that defense was made subject to NICO's explicit reservation of its rights to seek the declaration sought herein and below, namely that NICO has no duty to defend or indemnify Shuffetts or Stinson or to pay Bailey for the damages he sustained as a result of the accident with Stinson.

## COUNT I- DECLARATORY JUDGMENT

19. NICO re-alleges and incorporates by reference the allegations contained in numerical paragraphs 1-18 as if set out fully herein.

19. There is an actual, justiciable controversy between the parties about the duties owed by NICO under the Policy as it relates to the Tort Action, and NICO therefore respectfully requests that this Court enter a declaratory judgment in favor of NICO that:

(a) There is no liability coverage owed under Section II of the Policy unless the damages sought by Bailey against Shuffetts and Stinson in the Tort Action are "resulting from the ownership, maintenance or use of a covered "auto."

(b) Bailey's damages do not arise or result from the ownership, maintenance or use of a covered "auto" under the Policy because (i) Stinson's 2021 Chevrolet Blazer that she was driving at the time of the accident was not specifically described in Item Two of the Declarations, nor was it either (ii) newly acquired by Shuffetts (as set forth in Section I, Paragraph B) or (iii) used by Shuffetts as a temporary substitute vehicle under the very limited circumstances set forth in Section I, Paragraph C of the Policy.

(c) As a result, NICO has no duty to defend or indemnify Shuffetts or Stinson or to pay Bailey for any judgment rendered against them in the Tort Action. It also has no duty to continue to provide a defense to Shuffetts in the Tort Action and is entitled to withdraw the defense currently being provided.

WHEREFORE, NICO respectfully requests that this Court enter a declaratory judgment in its favor as set forth herein, and that it be awarded any and all other relief to which it is entitled, including its reasonable costs incurred in this action.

Respectfully submitted,

/s/ Mindy G. Barfield
Mindy G. Barfield
DINSMORE & SHOHL LLP
100 West Main Street, Suite 900
Lexington, Kentucky 40507
T: 859-425-1000
F: 859-425-1099
mindy.barfield@dinsmore.com
*Counsel for Plaintiff*

44102209.2