UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CASE NO. 1:24-cv-00088-GNS-HBB

NATIONAL INDEMNITY COMPANY             PLAINTIFF

v.

SHUFFETT'S DAY ADULT DAY CARE INC. d/b/a
EDMONTON ADULT DAY HEALTH

LAUREN STINSON

JALLEEM BAILEY             DEFENDANTS

\* \* \* \* \* \* \*

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON ITS COMPLAINT FOR DECLARATORY JUDGMENT

For its Motion for Summary Judgment on its Complaint for Declaratory Judgment, Plaintiff, National Indemnity Company ("National"), hereby states and alleges as follows:

### INTRODUCTION

In this case, National seeks a declaratory judgment that it has no duty to continue to defend or to indemnify and/or pay for any judgments rendered against the Defendants Shuffett's Day Adult Day Care, Inc. ("Shuffett's") and Lauren Stinson ("Stinson") in a state court tort case brought by Jalleem Bailey ("Bailey") against Shuffett's and Stinson. In his complaint in the state court action, Bailey contends that Stinson was acting in the course and scope of her employment with Shuffett's when the vehicle she was operating struck Bailey who was on a motorcycle. Bailey alleges he suffered bodily injury and other damages from the accident and alleges that Shuffett's is both vicariously and directly liability for Stinson's negligence and/or its own negligence and Bailey's resulting injuries.

Limited discovery has now closed and there are no genuine issues of material fact in dispute. It is undisputed Stinson was not operating a covered automobile under the under the terms of the Commercial Automobile Liability Policy No. 70APS091774-04 ("the Policy") which National issued to Shuffett's. What remains is a legal, contract construction issue that is ripe for summary judgment: that, as a matter of law, the Policy is not triggered and National has no duty to defend or indemnify either Shuffett's or Stinson or to pay Bailey on account of Bailey's claims in the state court action because Bailey's alleged damages did not result "from the ownership, maintenance or use of a covered 'auto'" as required by the threshold terms of the Policy.

## FACTUAL BACKGROUND

### 1. The Accident and Bailey's State Court Action.

National's instant declaratory judgment complaint arises from a civil action commenced in the Barren Circuit Court by Bailey against Shuffett's and its employee, Stinson, styled *Jalleem Bailey v. Lauren Stinson et al.,* Civil Action No. 23-CI-00549 ("the State Court Action"). (*See* Amended Complaint, D.N. 1-1, attached as **Exh. 1**). Bailey's State Court Action alleges that on or about August 25, 2023, Stinson was acting in the course and scope of her employment with Shuffett's when the motor vehicle she was driving negligently collided with Bailey and the motorcycle he was driving (the "Accident"). Bailey alleges that the Accident caused him to suffer bodily injuries and other damages and that Shuffett's is both vicariously and directly liable for Stinson's negligence and/or its own negligence and Bailey's resulting injuries. (*See* Exh. 1 at ¶¶ 39-43).

Bailey's Complaint further alleges that that "[a]t the time of this crash, Stinson was acting as an agent, servant and/or employee of Shuffett's"; was "working with a client of Shuffett's and running an errand for that client"; and "was within the course and scope of her employment or

2

agency and in furtherance of the interests of Shuffett's" which he contends renders Shuffett's "liable for Stinson's conduct in causing this crash and liable for all damages that Jalleem sustained as a result of the crash." (*Id.* at ¶¶ 36-39). Bailey also alleges direct negligence against Shuffetts's for allegedly "failing to properly hire, train and supervise Stinson in the operation of a motor vehicle, while performing work for Shuffett's." (*Id.* at ¶ 40).

Importantly, the police report taken after the August 25, 2023 accident with Bailey shows Stinson was driving her own personal vehicle at the time – a 2021 Chevrolet Blazer – VIN 3GNKBCRS5MS531127. (*See* Police Report, D.N. 1-2, attached as **Exh. 2**).

### 2. The Pertinent Terms and Provisions of Shuffetts's Policy with National.

National issued Commercial General Liability Policy No. 70APS091774-04 to Shuffett's which was in effect during the Policy Period of April 11, 2023 to April 11, 2024. The unambiguous terms of the Policy state in relevant part:

**SECTION I – COVERED AUTOS**

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

**A.   Description of Covered Auto Designation Symbols**

| Symbol | | Description of Covered Auto Designation Symbols |
|---|---|---|
| … | | |
| 7 | Specifically Described "Autos" | Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (and for Liability Coverage any "trailers" you don't own while attached to a power unit described in Item Three) |
| … | | |

**B.   Owned Autos You Acquire After the Policy Begins**

    **1.**     If Symbols **1, 2, 3, 4, 5, 6 or 19** are entered next to a coverage in Item Two of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy period.

    **2.**     But, if Symbol **7** is entered next to a coverage in Item Two of the Declarations, any "auto" you acquire will be a covered "auto" for that coverage only if:

        **a.**     We already cover all "autos" you own for that coverage, or it replaces an "auto" you previously owned that had that coverage; and

        **b.**     You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

    **C.**     **Certain Trailers, Mobile Equipment and Temporary Substitute Autos**

If Covered Autos Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Covered Autos Liability Coverage:

…

    **3.**     Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:
        **a.**     Breakdown;
        **b.**     Repair;
        **c.**     Servicing;
        **d.**     "Loss"; or
        **e.**     Destruction.

**SECTION II – LIABILITY COVERAGE**

    **A.**     **Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."
…

We have the right and duty to defend any "insured" against a "suit" asking for such damages…. However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage"…to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Covered Autos Liability Coverage Limit of insurance has been exhausted by payment of judgments or settlements.

    **1.**    **Who is an Insured**

The following are "insureds":

**a.** You for any covered "auto";

**b.** Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

    **(1)** The owner or anyone else from who you hire or borrow a covered "auto"….
    **(2)** Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.
    …

**c.** Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

…

## SECTION V – DEFINITIONS

**A.** "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

**B.** "Auto" means:

    **1.** A land motor vehicle, "trailer" or semitrailer designed for travel on public roads;

    **2.** Any other land vehicle that is subject to compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged…

**C.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these.

…

**F.** "Employee" includes a "leased worker." "Employee" does not include a "temporary worker."

**G.** "Insured" means any person or organization qualifying as an insured in the Who is an Insured provision in the applicable coverage…

…

**J.** "Loss" means direct and accidental loss or damage.

…

  **N.**  "Suit" means a civil proceeding in which:

    **1.**  Damages because of "bodily injury" or "property damage"…

  to which this insurance applies…

  "Suit" includes:

    **a.**  An arbitration proceeding in which such damages…are claimed and to which the "insured" must submit or does submit with our consent;
    **b.**  Any other alternative dispute resolution proceeding in which such damages…are claimed and to which the insured submits with our consent.

…

(*See* Policy, D.N. 1-3, attached as **Exh. 3** at pp. 1-3, 10-12 of 12). "You" is further defined to mean the named insured Shuffett's Day Adult Day Care, Inc. (*Id*.).

Additionally, Item Two of the Business Auto Coverage Declarations for the Policy contains a Schedule of Coverages and Covered Autos which lists two vehicles: a 2006 Chrysler Town and Country and a 2017 Nissan Altima. (*See* Policy Declarations, Item Two, D.N. 1-4, attached as **Exh. 4**). Stinson's 2021 Chevrolet Blazer is not listed in the Schedule as a covered auto.

  **3.**  **National Agrees to Defend Under a Reservation of Rights and Files Its Instant Declaratory Judgment Complaint.**

National assumed the defense of Shuffett's and Stinson in the State Court Action under a complete reservation of National's rights, including the right to seek a declaration that it has no duty to defend or indemnify Defendants under the Policy. Stinson is also being defended by her personal automobile carrier in the State Court Action.

On or about July 10, 2024, National filed the instant action in this Court seeking a declaratory judgment that it has no duty to defend or indemnify Shuffett's or Stinson for Bailey's claims against them in State Court Action, and/or to pay Bailey in the event he obtains a judgment against Shuffett's or Stinson in the State Court Action.

National's Complaint for Declaratory Judgment contends that (1) the 2021 Chevrolet Blazer driven by Stinson at the time of the accident was her own personal vehicle insured by another carrier, and it is not a "covered auto" specifically described and listed in the Schedule of Covered Autos of the Policy; (2) Stinson's vehicle was also not a newly acquired or a temporary substitute vehicle as those terms are specifically described in Section 1, Paragraphs B and C of the Policy; and (3) Section II of the Policy limits liability coverage thereunder to those claims in which an "insured" "legally must pay as damages "because of "bodily injury" or "property damage to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto." (*See* D.N. 1 at ¶¶ 14-16).

The Court entered its scheduling order on December 10, 2024 and set deadlines including dates to complete limited discovery and for dispositive motions/*Daubert* challenges. (*See* D.N. 22). However, no discovery was taken and the die has been cast – there are no genuine issue of material facts in dispute.[1] National files the instant Motion to obtain a ruling as quickly as possible from this Court on the purely legal issue of whether it has a duty to continue to defend Shuffett's and Stinson from the relevant allegations made against them in the State Court Action and/or to indemnify them for any judgment Bailey receives against them in the future.

### **STANDARD OF REVIEW**

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street*

---

[1] Defendant Stinson certainly has not disputed any of these allegations. In fact, after being served, she failed to even answer or respond to National's Complaint for Declaratory Judgment. National previously filed a motion for default judgment on March 7, 2025. (*See* D.N. 24). On April 15, 2025, it also filed a Motion seeking a Clerk's entry of default against Stinson. (*See* D.N. 26), and will refile its Motion for Default Judgment after the clerk's entry is docketed.

*v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).  Rather, the test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996).  Once the moving party demonstrates the absence of a genuine issue of material fact, "[t]he nonmoving party must thereafter produce specific facts demonstrating a genuine issue of fact for trial." *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 800 (6th Cir. 1994); *Allstate Ins. Co. v. Coffey*, 796 F. Supp. 1017, 1018 (E.D. Ky. 1992). The non-moving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be resolved by a jury."  *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149-150 (6th Cir. 1995).  This "evidence" must be admissible.

Essentially, a motion for summary judgment is a means by which to "challenge the opposing party to 'put up or shut up' on a critical issue." *Street v. J.C. Bradford and Co.,* 886 F.2d 1472, 1478 (6th Cir. 1989).  The mere existence of a scintilla of evidence in support of the non-movant is not sufficient; there must be sufficient evidence upon which a jury could reasonably find for the non-movant.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986) (overruled on other grounds).  If the evidence presented is "merely colorable" and not "significantly probative," the Court must grant summary judgment.  *Id.* at 249.

Here, no genuine issues of material fact are in dispute.  Stinson has, in essence, admitted the allegations of National's Declaratory Judgment Complaint through her default, and the Shuffett's and Bailey have not and cannot adduce any evidence to dispute them. What exists are undisputed facts which must be applied to the term of the National Policy.  Summary Judgment is appropriate here.

## ARGUMENT

National's Motion for Summary Judgment presents a purely legal issue that is ripe for this Court to adjudicate, namely whether the unambiguous terms of the Policy require it to provide Shuffett's and Stinson with a defense and indemnity for the tort claims made in the State Court Action by Bailey against them.

It is well-settled law in Kentucky that an insurance policy, like any other contract, fixes, defines and measures the parties' rights and requires a reasonable interpretation as a whole to carry out the intention of the parties within the clear meaning of its terms." *Bidwell v. Shelter Mut. Ins. Co.*, 2010 Ky. App. Unpub. LEXIS 633 at *8 (Ky. App. Aug. 13, 2010). When "an insurance policy is clear and unambiguous, it cannot be construed to mean otherwise than what it says." *See Simpsonville Wrecker Serv. Inc. v. Empire Fire & Marine Ins. Co.*, 793 S.W.2d 825, 829 (Ky. App. 1989). The terms of the policy control: "courts cannot make a new contract for the parties under the guise of interpretation or construction but must determine the rights of the parties according to the terms agreed upon them." *Meyers v. Kentucky Med. Ins. Co.*, 982 S.W.2d 203, 209-10 (Ky. App. 1997). And importantly, it is the burden of the party seeking coverage to demonstrate that coverage under the insuring clause of the policy applies. *Secura Ins. Co. v. Gray Constr., Inc.*, 717 F. Supp. 2d 710, 714-15 (W.D. Ky. 2010).

Here, the Defendants cannot meet that burden, and the allegations made by Bailey against Shuffett's and Stinson do not trigger the Policy's liability coverage. The Policy defines that coverage under Section II, stating:

**SECTION II – LIABILITY COVERAGE**

    **A.    Coverage**

**We will pay all sums an "insured" legally must pay as damages because of "bodily injury"** or "property damage" to which this insurance applies, **caused by**

9

> **an "accident" and resulting from the ownership, maintenance or use of a covered "auto."**
> …
>
> We have the right and duty to defend any "insured" against a "suit" asking for such damages…. However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage"…to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Covered Autos Liability Coverage Limit of insurance has been exhausted by payment of judgments or settlements.
>
> **1.    Who is an Insured**
>
> The following are "insureds":
> **a.**    You for any covered "auto";
> **b.**    Anyone else while using with your permission a covered "auto" you own, hire or borrow except:
>
> > **(1)** The owner or anyone else from who you hire or borrow a covered "auto"….
> > **(2)** Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.
> > …

**c.**    Anyone liable for the conduct of an "insured" described above but only to the extent of that liability**.**
…

(*See* Exh. 3, pp. 2-3 of 12, emphasis added).

However, Bailey's damages do not arise or result from the ownership, maintenance or use of a covered "auto" under the Policy. Shuffetts's National Policy provides in "Section I—Covered Autos" that

> Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

(*Id.* at p. 1 of 12).

Item Two of the Business Auto Coverage Declarations for the Policy contains a Schedule of Coverages and Covered Autos. The Schedule of Covered Autos lists two vehicles: a 2006 Chrysler Town and Country and a 2017 Nissan Altima.

[Schedule of Covered Autos table showing Policy Number 70 APS 091774 - 04, Effective Date 04/11/2023, Named Insured: SHUFFETTS ADULT DAY CARE INC, listing Vehicle 1: 2006 Chrysler Town & Country, VIN 1A4GP45R06B746311, Edmonton, KY, 7 seats; Vehicle 2: 2017 Nissan Altima, VIN 1N4AL3AP2HC167503, Edmonton, KY, 5 seats]

(*See* Exh. 4, Policy Declarations, Item Two).

It is undisputed that Stinson was not operating a covered auto under the Policy, and thus the Policy's liability coverage does not apply to Bailey's accident or loss. The Police Report taken at the time of the accident confirms that Stinson was driving a 2021 Chevrolet Blazer. (*See* Exh. 2). Stinson's 2021 Chevrolet Blazer is not listed as a "covered auto" specifically described and listed in the Schedule of Covered Autos of the Policy. In fact, the 2021 Chevrolet Blazer driven by Stinson at the time of the accident was her own personal vehicle insured by another carrier. (Complaint, D.N. 1, at ¶ 11). Certainly, Stinson – who is in the best position to know the facts surrounding the status of the auto she was driving at the time of the accident – has not disputed this allegation. Because of her default she has, in essence, "admitted" these facts. Discovery has closed and yet no record facts have been adduced to dispute that (1) Stinson was driving her own personal vehicle at the time of the accident; and (2) Stinson's personal vehicle was not listed as a covered "auto" on the Policy. Applying these undisputed facts to the policy language, there can

11

be no conclusion other than the "'accident' [did not] 'result[] from the ownership, maintenance or use of a covered 'auto.'" (*See* Exh. 3, p. 2 of 12).

While the Policy provides for limited exceptions in Section I, Paragraphs B and C – none of them apply here. Section I, Paragraph B, would potentially provide coverage for an automobile that Shuffett's "newly acquired" even if was not listed in the Schedule of Covered Autos. That section reads in pertinent part:

> **B. Owned Autos You Acquire After the Policy Begins**
>
> …
>
> **2.** But, if Symbol **7** is entered next to a coverage in Item Two of the Declarations, any "auto" you acquire will be a covered "auto" for that coverage only if:
>
> > **a.** We already cover all "autos" you own for that coverage, or it replaces an "auto" you previously owned that had that coverage; and
> >
> > **b.** You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

(*See* Exh. 3, p. 2 of 12). However, the 2021 Chevrolet Blazer operated by Stinson at the time of the accident was never previously owned nor acquired by Shuffett's, nor is there any evidence of that fact in the record. Nor could there be. At all relevant times the 2021 Chevrolet Blazer was indisputably owned by Stinson. (*See* Exh. 2). Certainly, Stinson herself has not disputed that fact (as alleged in Paragraph 14 of the Declaratory Judgment Complaint) and through her default has essentially admitted it. As such, Section I, Paragraph B does not provide any coverage for this loss.

Section I, Paragraph C also provides an exception if the vehicle is used by Shuffett's as a temporary substitute vehicle under the very limited circumstances set forth in Section I, Paragraph C of the Policy. It provides in pertinent part:

> **C. Certain Trailers, Mobile Equipment and Temporary Substitute Autos**
>
> If Covered Autos Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Covered Autos Liability Coverage:

12

> …
>
> **3.** Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:
> **a.** Breakdown;
> **b.** Repair;
> **c.** Servicing;
> **d.** "Loss"; or
> **e.** Destruction.

(*Id*. at p. 2 of 12).

None of the "covered autos" listed in the Shuffetts's Policy were "out of service" for any of the factors enumerated in Section I, Paragraph C (breakdown, repair, servicing, "loss" or destruction), and certainly no evidence of that fact has or could be adduced to create a jury issue here. In light of this, the 2021 Chevrolet Blazer that Stinson was driving at the time of the accident was and is not a "temporary substitute vehicle" under this Policy section.

This case is on all fours with *United Fin. Cas. Co. v. Warner*, 2019 U.S. Dist. LEXIS 58555, *3 (W.D. Ky. Jan. 22, 2019) – a declaratory judgment case very similar to this one and decided by this very court. As here, there was no discovery conducted by the parties in *Warner*. The insurer United Financial filed a motion for summary judgment arguing that Warner was not entitled to UIM coverage under her employer's (Teal Logistics's) commercial auto policy. *Id*. The Court found that "it is undisputed that Warner was operating her personal vehicle at the time of the accident and that her vehicle is not listed as an insured auto under the policy…[and that] Warner's personal vehicle does not meet the definition of a 'temporary substitute auto' under the policy." *Id*. at *7. The Court held that "[b]ased on these undisputed facts and based on the plain meaning of the policy and endorsements…Warner does not qualify as an insured under the policy and, as a result, summary judgment is warranted in favor of United Financial. *Id*.

13

In sum, just as in *Warner*, this case presents a purely legal exercise that requires no fact-finding. *See Scottsdale Ins. Co. v. Sandler*, 2009 U.S. Dist. LEXIS 43055 at *6 (E.D. Ky. May 11, 2009) (citing *Reynolds v. Travelers Indem. Co. of Am.*, 233 S.W.3d 197, 200 (Ky. App. 2007) (construing policy language is a question of law for the court)). The burden is on the Defendants to establish that Bailey's claims against Shuffett's and Stinson come within the insuring clause of the Policy. *See Secura Ins. Co. v. Gray Constr. Co.,* 717 F.Supp. 2d at 714-15. They have not and cannot meet that burden. Instead, the undisputed facts show that any liability ultimately assigned by a jury in the State Court Action to Shuffett's or Stinson did not result from the "ownership, maintenance, or use of a covered auto." As such, National has no duty to defend or indemnify either Shuffett's or Stinson or to pay Bailey on account of Bailey's claims.

Even if Stinson's personal vehicle were deemed a covered "auto" under the Policy – which as shown above it should not – coverage under the Policy would still be lacking for Bailey's losses caused by Stinson's use of that covered "auto". After all the Policy's liability coverage only indemnifies for "sums ***an 'insured'*** legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies…" (*See* Policy, Exh. 3, p. 2 of 12, emphasis added). The Policy's definition of "Who is an Insured" provides that anyone driving a covered "auto" with Shuffett's permission is an "insured" ***except*** for (1) "the owner or anyone else from who you hire or borrow a covered 'auto'; and/or (2) "[y]our 'employee' if the covered 'auto' is owned by that 'employee' or a member of his or her household." (*Id.* at pp. 2-3). Since Stinson indisputably owned the vehicle and was a Shuffett's employee, she cannot qualify as an "insured" for purposes of the Policy, and thus no liability coverage applies to damages Stinson is ultimately ordered to pay Bailey in the State Court Action.

Finally, under Kentucky law, an insurer's duty to defend "ends once the insurer establishes that the liability is in fact not covered by the policy." *Ky. Assoc. of Counties All Lines Fund Trust v. McClendon*, 157 S.W.3d 626, 635 (Ky. 2005). As such, this Court should also provide in its declaratory judgment that, since there is no coverage under the Policy for Bailey's losses (for the reasons stated herein), National has no duty to continue to provide a defense to Shuffett's and/or Stinson in the State Court Action and is entitled to withdraw any defense it is currently providing to them.

## **CONCLUSION**

For the foregoing reasons, National respectfully requests this Court grant it Motion for Summary Judgment in favor of its Complaint for Declaratory Judgment.

Respectfully submitted,

/s/ Kyle R. Bunnell
Mindy G. Barfield
Kyle R. Bunnell
DINSMORE & SHOHL LLP
100 West Main Street, Suite 900
Lexington, Kentucky 40507
Telephone: (859) 425-1000
Facsimile: (859) 425-1099
mindy.barfield@dinsmore.com
kyle.bunnell@dinsmore.com
*Counsel for Plaintiff*

# CERTIFICATE OF SERVICE

       I hereby certify that on the 16th day of April, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Richard L. Walter
BOEHL STOPHER & GRAVES, LLP
410 Broadway
Paducah, KY  42001
*Counsel for Defendant, Shuffett's Day Adult Day Care, Inc.*

Matt McGill
LOWDER & MCGILL, PLLC
P. O. Box 900
Bowling Green, KY  42103
*Counsel for Defendant, Jalleem Bailey*

and via U.S. Mail to:

Lauren Stinson
325 Zoe Drive
Glasgow, Kentucky 42141
*Defendant*

                                                             /s/ *Kyle R. Bunnell*
                                                           *Counsel for Plaintiff*

60611909.2