UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CASE NO. 1:24-cv-88-GNS

NATIONAL INDEMNITY COMPANY                                                        PLAINTIFF

V.

SHUFFETTS DAY ADULT DAY CARE INC. d/b/a
EDMONTON ADULT DAY HEALTH,
LAUREN STINSON and JALLEEM BAILEY                                             DEFENDANTS

---

**PLAINTIFF'S BRIEF ON *GRAND TRUNK* FACTORS
REQUIRED BY THE COURT'S JULY 18, 2025 ORDER**
*[Filed Electronically]*

---

Consistent with the Court's July 18, 2025 Order (D.N. 31), Plaintiff, National Indemnity Company ("NICO") hereby files the instant brief detailing the reasons why the factors identified in *Grand Trunk W.R.R. Co. v. Consol. Rail Co.*, 746 F.2d 323, 326 (6th Cir. 1984) favor this Court exercising jurisdiction over this declaratory judgment action.

## INTRODUCTION

As shown herein, this case presents a discrete, purely legal issue: whether, under the unambiguous terms of the insurance policy it issued to its insured, NICO has a duty to defend and indemnify for a state court auto accident case filed against its insureds under that policy. The material facts relevant to this coverage dispute are not involved in nor will they be decided by the Barren Circuit Court in the pending state court tort action. Nor does it involve any novel issue of Kentucky law or public policy which Kentucky state courts are peculiarly positioned to interpret and enforce. Because exercising its jurisdiction to resolve this insurance coverage issue will not create friction with the state courts, and resolution of the issue by this Court at this time is in fact

a more timely and superior avenue for resolving the coverage dispute between the parties, NICO requests this Court agree to exercise its jurisdiction and to rule on the pending default and summary judgment motions before this Court.

## PERTINENT UNDISPUTED BACKGROUND FACTS[1]

As this Court is aware, this is a declaratory judgment action. In its Complaint in the instant action, NICO alleged several material, undisputed facts pertinent to its resolution, namely that:

- On or about August 25, 2023, an automobile collision occurred between vehicles operated by Jalleem Bailey ("Bailey") and Stinson. Thereafter, and on or about October 13, 2023, Bailey filed a complaint in the Barren Circuit Court, Barren County, Kentucky against Stinson and her employer, Shuffetts Adult Day Care, Inc. d/b/a Edmonton Adult Day Health ("Shuffetts") in which he claimed that, while in the scope and course of her employment with Shuffetts, Stinson acted negligently in causing the aforementioned automobile accident, and that Stinson and Shuffetts were liable for and should compensate Bailey for his accident-related injuries and resulting damages. This state court action is styled *Jalleem Bailey v. Lauren Stinson, et al.,* Civil Action No. 23-CI-00549 (the "Tort Action"). (D.N. 1 at ¶¶ 7-9).

- As reflected in the police report, Stinson was driving a 2021 Chevrolet Blazer at the time of the accident. In fact, the 2021 Chevrolet Blazer driven by Stinson at the time of the accident was her own personal vehicle insured by another carrier. (D.N. 1 at ¶ 10).

- At all relevant times, Shuffetts was insured under a commercial liability policy issued by NICO. The 2021 Chevrolet Blazer driven by Stinson at the time of the accident was not listed as a "covered auto" under the NICO policy issued to Shuffetts. (*See* Policy Declarations, Item Two, D.N. 1-4 (listing two vehicles: a 2006 Chrysler Town and Country and a 2017 Nissan Altima and ***not*** Stinson's Chevrolet Blazer)). Nor is there any proof that either of the limited exceptions under the NICO Policy (for "newly acquired" autos or autos used because any of the listed vehicles were "out of service") rendered it a "covered auto." Under the terms of the NICO policy, liability coverage under it only extended to bodily injury arising from the use of a "covered auto." (D.N 1 at ¶¶ 7, 10, 12-15).

- NICO agreed to provide a defense to its insured in the Tort Action under an express reservation of its rights to later dispute and deny liability coverage for the Tort Action. (D.N. 1 at ¶ 11).

---

[1] The facts pertinent hereto are more fully set out in NICO's currently pending Motion for Summary Judgment (D.N. 28) as well as its Motion for Default Judgment as to Defendant Laura Stinson ("Stinson") (D.N. 30), and those filings are incorporated herein by reference.

NICO is not a defendant in the Tort Action, nor are any insurance coverage issues before the Barren Circuit Court for decision in the Tort Action. NICO commenced the instant action on July 10, 2024, and thus months after the filing of the Tort Action. In it, NICO seeks a declaration that it has no duty to defend or indemnify its insureds, or pay Bailey, for the Tort Action.

Stinson failed to file an answer or responsive pleading in response to the Complaint in the instant action, and after the Clerk's entry of default, NICO refiled a Motion for Default Judgment against Stinson on or about May 15, 2025 (D.N. 30). Neither Stinson nor any other Defendant filed a response to the default judgment motion. Consistent with the Court's Scheduling Order, NICO filed a Motion for Summary Judgment as to its declaratory judgment claim on April 16, 2025 (D.N. 28). No response was filed by any of the Defendants by the deadline set in Local Rule 7.1(c) or thereafter. Both Motions remain pending for decision.

As requested by the Court in its July 18, 2025 Order, NICO files the instant brief to address why this Court should exercise jurisdiction over this action under the Declaratory Judgment Act and thereafter rule on the pending Motions and resolve the current insurance coverage dispute.

## ARGUMENT

The Declaratory Judgment Act (the "Act") provides that "[i]n a case of actual controversy within its jurisdiction … any court of the United States, upon the filing of any appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201 (emphasis added). The U.S. Supreme Court has indicated that this Act "confer[s] on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). In passing the Act, Congress "created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants." *Wilton*, 515 U.S. at 288. Thus, district courts

are afforded substantial discretion in their exercise of jurisdiction "in the first instance, because facts bearing on the usefulness of the declaratory judgment remedy, and fitness of the case for resolution, are peculiarly within their grasp." *Id.* at 289.

There are five factors a district court must consider to properly exercise its discretion pursuant to the Act:

> (1) whether the declaratory action would settle the controversy;
>
> (2) whether the declaratory action would serve a useful purpose in clarifying the legal relationship at issue;
>
> (3) whether declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for res judicata;"
>
> (4) whether the use of declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and
>
> (5) whether there is an alternative remedy which is better or more effective.

*See*, *e.g.*, *Grand Trunk,* 746 F.2d at 326; *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008); *Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 812-13 (6th Cir. 2004); *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000).

A consideration of these factors – when applied to the undisputed facts here – militate in favor of this Court exercising its discretion over the instant declaratory judgment action.

**I.   The Factors Applied Here Support the Court Exercising Its Discretion Pursuant to the Declaratory Judgment Act.**

**(a)   Settlement of the Controversy.**

The first factor to consider is whether the district court's judgment would settle the controversy. Courts in the Sixth Circuit have routinely determined a declaratory relief action can settle an insurance controversy not addressed in a state court action – even when it will not resolve

the underlying state court action. *See*, *e.g.*, *Scottsdale Ins. Co.*, 513 F.3d at 555; *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir. 2003) ("[W]hile the declaratory judgment would not end the dispute between Cailu and Stewart, it would settle the controversy regarding the scope of insurance coverage issued by Northland to Cailu, and whether Northland had a duty to defend the insureds."); *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1066 (6th Cir. 1987) ("The grant of declaratory relief in insurance coverage cases undoubtedly settles the controversy over the insurer's liability to provide a defense for and/or indemnity its insured, thus clarifying the legal relationship at issue.").

The instant declaratory judgment action is discrete and will definitively and completely resolve the insurance coverage dispute between the parties. The *only* issue that need be addressed by this Court is whether NICO has a duty to indemnify and defend Stinson, and/or pay Bailey, in and for the Tort Action. That is a decision which will be rendered solely on an application of undisputed facts – that Stinson was driving her personal vehicle at the time of the accident and it was not a listed as a "covered auto" in the policy – to the terms of the insurance policy. In contrast, the Tort Action will only resolve the issues of fault for causing the accident, and causation for and amount of Bailey's accident-related damages. NICO is not a party in the Tort Action, nor are any insurance coverage issues raised in it. Issues of fact which may be in dispute in the Tort Action concerning fault or damages are not at issue here. The only material facts needed to resolve the instant declaratory judgment complaint are undisputed. As in the *Scottsdale* and *Northland* cases, the issue here is a purely legal one – not a factual one. The resolution of the instant declaratory judgment action will resolve the insurance coverage dispute between NICO, Shuffetts, Stinson, and Bailey. Therefore, the first *Grand Trunk* factor weighs in favor of the Court exercising its discretion pursuant to the Declaratory Judgment Act in this case.

5

**(b)     Clarification of the Legal Relations at Issue.**

The second factor the Court must consider is closely related to the first factor. In fact, it is often considered in connection with it. *Travelers Indem. Co. v. Bowling Green Prof'l Assocs., PLC*, 495 F.3d 266, 271-72 (6th Cir. 2007). It is almost always the case that, if a declaratory judgment will settle a controversy, then it will clarify the legal relationship at issue. *Northland Ins. Co.*, 327 F.3d at 454. Courts in the Sixth Circuit have concluded that the legal relationship in the present declaratory judgment action is the only legal relationship in need of clarification – there is no need to clarify any legal relationships in the underlying state action. *See*, *e.g.*, *Scottsdale Ins. Co.*, F.3d at 557; *West Am. Ins. Co. v. Prewitt*, 208 Fed.Appx. 393, 397 (6th Cir. 2006) ("This Court has held that declaratory relief was a proper remedy in cases where the declaratory action would clarify only the legal relationship between the insured and the insurer, and would not clarify the legal relationships in the state action."); *Northland*, 327 F.3d at 454; *Green*, 825 F.2d at 1066. The second *Grand Trunk* factor is founded in a desire to clarify the legal relationship of the parties for declaratory judgment to provide a final resolution of the dispute presented. *Scottsdale Ins. Co.*, F.3d at 557. While there may be other tortious and contractual relationships at issue in the underlying state court action, the court exercising its discretion need only determine "…once and finally, the question of the insurance indemnity obligation of the insurer." *Id*.

Here, the relationships between NICO, Shuffetts, Stinson, and Bailey can be clarified in this declaratory judgment action – chiefly, that NICO has no duty to indemnify and defend Shuffetts and/or Stinson and pay Bailey for any amount he may recover in the Tort Action because his alleged damages did not result "from the ownership, maintenance or use of a covered 'auto'" as required by the threshold terms of the Policy. (*See* D.N. 1 at ¶¶ 12, 16). Given this, NICO has no duty to defend or indemnify Shuffetts and/or Stinson or to pay Bailey for any judgment obtained

in the state court Tort Action. This Court can clarify the legal relationships of the parties for purposes of insurance coverage in this action. As such, the second *Grand Trunk* factor also supports the Court's exercise of discretion pursuant to the Act.

### (c)     Race for *Res Judicata* – or "Procedural Fencing".

The third factor, the race for *res judicata* or "procedural fencing" – is meant to preclude jurisdiction for "declaratory plaintiffs who file their suits mere days or weeks **before** the coercive suit filed by a 'natural plaintiff' and who seem to have done so for the purpose of acquiring a favorable forum." *Scottsdale Ins. Co.*, F.3d at 558 (emphasis added); *AmSouth Bank, v. Dale*, 386 F.3d 763, 788 (6th Cir. 2004). "The question is…whether the declaratory plaintiff has filed in an attempt to get her choice of forum by filing first." *AmSouth Bank*, 386 F.3d at 789. Courts are reluctant to impute an improper motive on a plaintiff when there is an absence of such evidence in the record. *Travelers*, 495 F.3d at 272; *Allstate Ins. Co. v. Mercier*, 913 F.2d 273, 279 (6th Cir. 1990). However, when a plaintiff files a declaratory judgment claim about insurance coverage **after** the state court tort litigation has already commenced, courts generally give the plaintiff "the benefit of the doubt that no improper motive fueled the filing of [the] action." *Bituminous*, 373 F.3d at 814 (emphasis added); *see also Northland*, 327 F.3d at 454 (the Court found no improper motive when the facts demonstrated that plaintiff filed its action only after it became apparent that its insured had no colorable claim to coverage.)

Here, the record is devoid of any evidence that NICO commenced the instant action to defeat *res judicata* or for any improper motive. In fact, the evidence clearly demonstrates the opposite. NICO initiated the instant declaratory judgment action months after Bailey filed his Tort Action in Barren Circuit Court. Moreover, NICO accepted Shuffetts' defense in the state court Tort Action pursuant to a full, complete, and explicit reservation of rights. (*See* D.N. 1 at ¶ 11).

7

As such, the third *Grand Trunk* factor also supports the Court's exercise of discretion pursuant to the Act.

    (**d**)  **Increased Friction Between the State and Federal Court.**

The fourth factor the Court must consider is whether exercising its discretion would increase friction between the state and federal courts. The U.S. Supreme Court has cautioned "where another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court might be indulging in '[g]ratutitous interference'" if it permitted the federal declaratory action to proceed. *Wilton*, 515 U.S. at 283 (internal citation omitted). Nonetheless, "the mere existence of a state court proceeding is not determinative of improper federal encroachment upon state jurisdiction." *Green*, 825 F.2d at 1067. When evaluating potential friction between state and federal courts, three (3) additional sub-factors are considered:

    (1)  whether the underlying factual issues are important to an informed resolution of the case;

    (2)  whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

    (2)  whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Bituminous*, 373 F.3d at 814-15 (internal citation omitted).

As to the first sub-factor, and as noted previously, there are no fact issues in the Tort Action which are material or important to a resolution of the instant coverage dispute. Federal courts have concluded that when a declaration of the scope of insurance coverage is sought, such questions can be resolved as a matter of law and do not require any factual findings from the state court. *Northland*, 327 F.3d at 454; *Green*, 825 F.3d at 1067. Moreover, "the liability issues being

determined in the state court proceeding may well be legally, if not factually, distinct from the issues of policy interpretation which are central to the federal declaratory judgment action." *Green*, 825 F.3d at 1067. NICO's policy is clear and unambiguous, and there are no factual findings that need be resolved by the state court in the Tort Action which impact this Court's resolution of the purely legal question posed in this case.

The second sub-factor turns on whether a state or federal court is best suited to resolve the issues in the declaratory judgment action. Typically, state courts are better to resolve novel issues of state court law. *Travelers*, 495 F.3d at 272. When state law is clear and a state court is not considering the issues in the declaratory judgment action, this consideration has less force. Courts have ruled that when an insurance company is "not a party to the state court action, and neither the scope of the insurance coverage nor the obligation to defend [is] before the state court…a decision by the district court on these issues would not offend principles of comity." *Northland*, 327 F.3d. at 454. Here, Kentucky state law is clear that an insurance policy, like any other contract, fixes, defines and measures the parties' rights and requires a reasonable interpretation as a whole to carry out the intention of the parties within the clear meaning of its terms." *Bidwell v. Shelter Mut. Ins. Co.*, 2010 Ky. App. Unpub. LEXIS 633 at *8 (Ky. App. Aug. 13, 2010). When "an insurance policy is clear and unambiguous, it cannot be construed to mean otherwise than what it says." *See Simpsonville Wrecker Serv. Inc. v. Empire Fire & Marine Ins. Co.*, 793 S.W.2d 825, 829 (Ky. App. 1989). The terms of the policy control: "courts cannot make a new contract for the parties under the guise of interpretation or construction but must determine the rights of the parties according to the terms agreed upon them." *Meyers v. Kentucky Med. Ins. Co.*, 982 S.W.2d 203, 209-10 (Ky. App. 1997). And importantly, it is the burden of the party seeking coverage to demonstrate that coverage under the insuring clause of the policy applies. *Secura Ins. Co. v. Gray*

*Constr., Inc.*, 717 F. Supp. 2d 710, 714-15 (W.D. Ky. 2010). There are no novel issues of Kentucky state law or policy involved here. Resolution of this case will only require this Court to apply undisputed facts to the unambiguous terms of an insurance policy – something this Court is as well positioned to do as the Barren Circuit Court.

The third sub-factor examines whether the issue in the federal action implicates any important state law or policies that are more properly considered by the state court. Courts have found that "issues of 'insurance contract interpretation are questions of state law with which the Kentucky state courts are more familiar and, therefore better able to resolve.'" *Travelers*, 495 F.3d at 273 (internal citations omitted). Nonetheless, not all issues of insurance contract interpretation address fundamental issues of the state court, and thus the federal courts are not unfit to consider those issues. *Northland*, 327 F.3d at 454 (finding that although the resolution of the declaratory judgment action seeking a determination of the scope of an insurance policy is governed by state contract law, "no state law or policy would be frustrated by the district court's exercise of jurisdiction, which would require the application of [state] law."). Again, no novel issues of Kentucky state law or policy are involved in resolution of the insurance coverage dispute in this case, and this Court's exercise of jurisdiction to resolve the instant case would not offend principles of comity[2].

---

[2] While the construction of insurance policies is generally an exercise best suited for state courts, that does not foreclose this Court for exercising its discretion here – given that the other *Grand Trunk* factors weigh in favor of doing so. *See Scottsdale Ins. Co.*, 513 F.3d at 561 (concluding that the third sub-factor cuts in favor of resolution by the state court, but that "given only one of these three sub-factors counsels against exercising jurisdiction….the district court's refusal to decline jurisdiction was not improper in this case.")

10

Balancing all three of these sub-factors weights in favor of the Court exercising its discretion here.

**(e)     Availability of an Alternative Remedy.**

The final factor to consider is the availability of an alternative remedy. Courts have concluded that "[a] district court should 'deny declaratory relief if an alternative remedy is better or more effective.'" *Scottsdale Ins. Co.*, 513 F.3d at 562 (citing *Grand Trunk*, 746 F.2d at 326). However, courts have also ruled that "intervening in a state court action would not necessarily provide a better or more effective alternative remedy." *Northland*, 327 F.3d at 448. Likewise, courts are not convinced that an action for indemnification, instituted only after the insurance company has provided defense which it is not obligated to render, is in every case a "superior remedy." *Green*, 825 F.2d at 1067.

While NICO could have potentially intervened in the Tort Action to pursue a declaratory judgment, it is not a superior remedy here.  In fact, the state court would likely wait to resolve the insurance coverage issues until after the liability and damages issues in the Tort Action are resolved. This inevitable undue delay would in fact result in a state court declaratory judgment action being an inferior – not better – remedy than NICO seeking a federal declaratory action and asking the Court to exercise its jurisdiction as it is doing here. After all, a resolution now of the insurance coverage issue will benefit all parties and inform them of whether there is any insurance coverage available for the Tort Action. As such, the final *Grand Trunk* factor also supports this Court's exercising its discretion pursuant to the Declaratory Judgment Act to resolve this case.

**II.     A Balancing of All Factors Supports the Court's Exercise of Discretion Pursuant to the Declaratory Judgment Act in This Case.**

Even if this Court determined that one *Grand Trunk* factor or sub-factor weighed against exercising jurisdiction and/or is neutral in effect, that does not foreclose it from exercising its jurisdiction in this case to resolve the purely legal insurance coverage issues raised in NICO's Complaint. In truth, and as demonstrated herein, each (or nearly each) of these factors supports this Court exercising its discretion pursuant to the Declaratory Judgment Act to resolve this declaratory judgment action. This Court has "unique and substantial discretion" to decide whether to declare the rights of the parties, and would not abuse it by exercising jurisdiction to resolve this case and the pending Motions before the Court. *Wilton*, 515 U.S. at 286.

## CONCLUSION

For the foregoing reasons, NICO requests that this Court exercise its discretion pursuant to the Declaratory Judgment Act and proceed to rule upon and grant its pending Motions for Summary Judgment and Default Judgment. (D.N. 28 and 30).

Respectfully submitted,

/s/ Mindy G. Barfield
Mindy G. Barfield
Kyle R. Bunnell
DINSMORE & SHOHL LLP
100 West Main Street, Suite 900
Lexington, Kentucky 40507
T: 859-425-1000
F: 859-425-1099
mindy.barfield@dinsmore.com
kyle.bunnell@dinsmore.com
*Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

   I hereby certify that on the \_\_\_\_th day of July, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Richard L. Walter
BOEHL STOPHER & GRAVES, LLP
410 Broadway
Paducah, KY  42001
*Counsel for Defendant, Shuffett's Day Adult Day Care, Inc.*

Matt McGill
LOWDER & MCGILL, PLLC
P. O. Box 900
Bowling Green, KY  42103
*Counsel for Defendant, Jalleem Bailey*

               /s/ *Kyle R. Bunnell*
               *Counsel for Plaintiff*

62948179.1