UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:24-CV-00088-GNS-HBB

NATIONAL INDEMNITY COMPANY                                                                                          PLAINTIFF

v.

SHUFFETT'S DAY ADULT DAY CARE INC.
d/b/a EDMONTON ADULT DAY HEALTH et al.                                                                    DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff's Motion for Summary Judgment (DN 28) and Plaintiff's Motion for Default Judgment (DN 30). The motions are ripe for adjudication.

**I.        STATEMENT OF FACTS AND CLAIMS**

This matter arises from a 2023 traffic accident in Glasgow, Kentucky. (Compl. ¶ 8, DN 1). Lauren Stinson ("Stinson") worked as a home health aide for Shuffett's Day Adult Day Care Inc., which does business as "Edmonton Adult Day Health" ("SDC"). (Compl. ¶¶ 2, 8). While running errands for a SDC client in her personal vehicle, Stinson collided with a motorcycle driven by Jalleem Bailey ("Bailey"). (Compl. ¶¶ 8-10; Compl. Ex. 2, at 2, DN 1-2).

Bailey later sued Stinson and SDC in Barren Circuit Court (Kentucky), alleging that Stinson acted negligently in operating her vehicle. (Compl. Ex. 1, ¶¶ 24, 32-34, DN 1-1 [hereinafter State Ct. 1st Am. Compl.]). Bailey asserts that both Stinson and SDC are liable for Stinson's negligence because Stinson was acting within the course and scope of her employment at the time of the accident. (State Ct. 1st Am. Compl. ¶¶ 36-39).

At the time of the accident, SDC was insured under a commercial liability policy ("Policy") issued by Plaintiff National Indemnity Company ("NICO"). In the state court action, NICO assumed the defense of both Stinson and SDC but did so under a complete reservation of rights. (Compl. ¶ 11).

NICO then filed this action, seeking a declaratory judgment on its duty to defend and indemnify SDC and Stinson in the state court action. (Compl. ¶¶ 19-19[1]). Following limited discovery, NICO moved for summary judgment. (Pl.'s Mot. Summ. J. 1, DN 28). Pursuant to the Court's order, the parties submitted additional briefing as to whether the Court should exercise jurisdiction over this matter. (Order, DN 31; Pl.'s Br., DN 32; Def.'s Br., DN 33 [hereinafter Bailey's Br.]; Def.'s Br., DN 34 [hereinafter SDC's Br.]). Throughout this action, Stinson has failed to participate. Accordingly, the clerk entered default against Stinson, NICO has moved for a default judgment against her. (Clerk's Entry Default, DN 29; Pl.'s Mot. Default J. 1, DN 30).

## II.  DISCUSSION

### A.  Jurisdiction

The Declaratory Judgment Act provides that:

> In a case of actual controversy within its jurisdiction . . . , any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a). The act "confer[s] on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Burlington Ins. Co. v. La Movida Inc.*, No. 3:18-CV-650-DJH-LLK, 2019 WL 10476279, at *1 (W.D. Ky. Sept. 20, 2019) (alteration in original) (quoting *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008)).

---

[1] The Complaint contains two paragraphs numbered Paragraph 19.

The Sixth Circuit considers five factors in determining whether a district court's exercise of jurisdiction over a declaratory judgment action is appropriate. *United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 396 (6th Cir. 2019). These factors are:

> (1) [W]hether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;" (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984).

A court should "balance" these factors and weigh them "according to the underlying considerations of efficiency, fairness, and federalism . . . ." *Id.* (quoting *W. World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014)). Thus, a district court should "take[] a good look at the issue and engage[] in a reasoned analysis of whether issuing a declaration would be useful and fair." *W. World Ins. Co.*, 773 F.3d at 759 (citing *Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 390 (5th Cir. 2003)). In situations where "*everyone*—the insured, the insurer, and the tort plaintiff" wants a declaratory judgment, special consideration should be given to that desire. *Id.* at 760. That wish, however is not determinative. *Id.* A district court should still decline jurisdiction if the action involves "novel, unsettled, or complex issues of state law; if there were evidence of procedural fencing; or if the sought-after declaration would somehow be frivolous or purely advisory." *Id.*

In considering the first factor—settlement of the controversy—two lines of precedent have emerged within the Sixth Circuit. *W. World Ins. Co.*, 773 F.3d at 760. One line of cases focuses on whether a declaratory judgment would resolve the underlying controversy in the state-court litigation. *Id.* (citing *Flowers*, 513 F.3d at 555-58). The other looks to determine whether a

3

declaratory judgment would settle the controversy between the parties *to the declaratory judgment action*—"that is, between the insurer and the insured." *Id.* A district court does not abuse its discretion by following the second line of precedent. *Cole's Place, Inc.*, 936 F.3d at 396 (citing *Mass. Bay Ins. Co. v. Christian Funeral Dirs., Inc.*, 759 F. App'x 431, 437-38 (6th Cir. 2018); *W. World Ins. Co.*, 773 F.3d at 760-61; *Flowers*, 513 F.3d at 556) ("This court's most recent decisions have held that district courts did not abuse their discretion in concluding that a declaratory judgment would settle the controversy by resolving the issue of indemnity."). This is especially true where the declaratory judgment plaintiff-insurer is not party to the state court action nor is the state court considering whether the plaintiff is obligated to defend. *Christian Funeral Dirs., Inc.*, 759 F. App'x at 438 (citing *Flowers*, 513 F.3d at 555-56).

In this instance, the Court would only determine whether NICO is required to indemnify SDC and Stinson, resolving the indemnity issue entirely. NICO is not a party to the state court action. (State Ct. 1st Am. Compl. 1). Neither the scope of SDC's insurance coverage nor the requirement to defend SDC is in front of the state court. (State Ct. 1st Am. Compl. 1). Thus, this Court will not have to inquire into matters before the state court to resolve this issue. Accordingly, the first factor weighs in favor of extending jurisdiction.

Next, the second factor asks whether a declaratory judgment would clarify the legal relationships at issue.[2] *Burlington Ins. Co.*, 2019 WL 10476279, at *3 (citing *Flowers*, 513 F.3d at 556). As with the first factor, a split has developed in the circuit as to whether a judgment must

---

[2] "The second factor in the *Grand Trunk* analysis is closely related to the first factor and is often considered in connection with it. Indeed, it is almost always the case that if a declaratory judgment will settle the controversy, then it will clarify the legal relations in issue." *Flowers*, 513 F.3d at 557 (internal citations omitted) (citing *Travelers Indem. Co. v. Bowling Green Prof'l Assoc., PLC*, 495 F.3d 266, 271-72 (6th Cir. 2007); *Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 814 (6th Cir. 2004)); *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir. 2003).

4

clarify only the relationship at issue in the declaratory judgment action or the underlying relationships in the state court action. *Christian Funeral Dirs., Inc.*, 759 F. App'x at 438 (citing *Allstate Ins. Co. v. Mercier*, 913 F.2d 273, 279 (6th Cir. 1990), *abrogated on other grounds by Wilton v. Seven Falls Co.*, 515 U.S. 277, 289-90 (1995)). As with the first factor, district courts do not abuse their discretion by extending jurisdiction when declaratory judgment only clarifies the relationship between insurer and insured. *Id.*

In this instance, the only legal relationship at issue is between NICO, Stinson, and SDC. A declaratory judgment deciding whether the Policy covers Stinson and SDC's actions clarifies that relationship and therefore weighs in favor of extending jurisdiction.

The third factor asks the court to determine whether the declaratory judgment action is an attempt to erect "procedural fencing" or to "provide an arena for a race for res judicata." *Travelers Indem. Co.* 495 F.3d at 271 (quoting *Grand Trunk W. R.R.*, 746 F.2d at 326). The purpose of this factor is to prevent "races to the courthouse" where declaratory judgment plaintiffs file their suits before the natural state court plaintiffs for the purpose of acquiring a more favorable forum. *AmSouth Bank v. Dale*, 386 F.3d 763, 788 (6th Cir. 2004); *Christian Funeral Dirs., Inc.*, 759 F. App'x at 438 (citing *Flowers*, 513 F.3d at 558). Courts, however, should not "impute an improper motive to a plaintiff where there is no evidence of such in the record." *Christian Funeral Dirs., Inc.*, 759 F. App'x at 438 (quoting *Flowers*, 513 F.3d at 558). When the declaratory judgment action is filed after the state court action has commenced, the declaratory plaintiff should be given "the benefit of the doubt that no improper motive fueled the filing of [the] action." *Bituminous Cas. Corp.*, 373 F.3d at 814; *see also Flowers*, 513 F.3d at 558; *Northland*, 327 F.3d at 454.

In this instance, nothing indicates that NICO initiated this declaratory judgment action in an attempt to create jurisdictional fencing. NICO filed suit nearly two months after the

commencement of the state court action. NICO has turned to the federal courts as a venue to resolve this coverage question, which is its prerogative under the Declaratory Judgment Act. Accordingly, this is no attempt to race to a judgment before the state court can answer the question of coverage. "While this action may have been an attempt to preempt an issue which the state court would eventually consider, the Declaratory Judgment Act gives [a plaintiff] the right to do precisely that . . . ." *Flowers*, 513 F.3d at 558. Accordingly, the third factor also weighs in favor of extending jurisdiction.

The fourth factor asks "whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach on state jurisdiction . . . ." *Travelers Indem. Co.*, 495 F.3d at 271 (quoting *Grand Trunk W. R.R.*, 746 F.2d at 326). Three sub-factors must be considered in making this determination:

> (1) whether the underlying factual issues are important to an informed resolution of the case;
> (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
> (3) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common law or statutory law dictates a resolution of the declaratory judgment action.

*Flowers*, 211 F.3d at 968 (citing *Wilton*, 515 U.S. 277).

Underlying factual issues about the accident itself are not important to an informed resolution of this case. This action comes down to contract interpretation. It is this Court's task to review the insurance coverage agreement between NICO and SDC, and determine whether NICO must indemnify SDC and Stinson. This determination does not rely upon determinations of fact by the state court where insurance coverage is not an issue. Accordingly, this subfactor weighs in favor of jurisdiction.

"With regard to the second subfactor, '[i]n general, states are in a better position to resolve insurance issues governed by state law.'" *La Movida Inc.*, 2019 WL 10476279, at *3 (quoting *Christian Funeral Dirs., Inc.*, 759 F. App'x at 440). This presumption has "less force," however, when the relevant state law is clear and well-settled. *Cole's Place, Inc.*, 936 F.3d at 401 (quoting *Flowers*, 513 F.3d at 560). This does not mean that there should be *no* concern in these circumstances. *Id.* In this instance, Kentucky's contract interpretation law is indeed clear and well-settled,[3] so there should be limited concerns about judicial friction. Thus, this subfactor is neutral and not especially relevant to the overall analysis. *Id.*

The third subfactor asks "whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common law or statutory law dictates a resolution of the declaratory judgment action." *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000). This subfactor cuts against the extension of jurisdiction to insurance policy disputes. *Cole's Place, Inc.*, 936 F.3d at 401. Accordingly, this subfactor weighs against the extension of jurisdiction.

Of the three subfactors, one weighs in favor of extending jurisdiction, one weighs against, and one is neutral. Therefore, the fourth factor is neutral.

The fifth factor asks the Court to search for a remedy that is "better" or "more effective." *Grand Trunk W. R.R. Co.*, 746 F.2d at 326. Where alternative remedies to federal jurisdiction exist in state court, this factor cuts against extending jurisdiction. *Travelers Indem. Co.*, 495 F.3d at

---

[3] While the discussion of NICO's motion for summary judgment goes into greater detail about Kentucky contract interpretation law, the terms of the insurance contract between NICO and Shuffett's are clear and this Court need not delve into undetermined questions of state law to reach a resolution of the coverage issue. *See, e.g.*, *Scottsdale Ins. Co. v. Good Karma Holdings LLC*, 500 F. Supp. 3d 634, 640-41 (W.D. Ky. 2020) (outlining the basic rules of construction of insurance contracts under Kentucky law).

273. One alternative remedy here is for NICO to seek a declaratory judgment in state court—as provided under Kentucky law. *Flowers*, 513 F.3d at 562 (citing KRS 418.040). Another alternative would be for NICO to file an indemnity action in federal court after the state-court proceedings have concluded. *Id.*

"[I]t is not clear," however, "whether such alternative remedies are better or more effective than a federal declaratory action." *Certain Underwriters at Lloyd's London v. Power Home Solar, LLC*, No. 2:23-CV-03891-ALM-EPD, 2025 WL 2721182, at *5 (S.D. Ohio Sept. 24, 2025) (quoting *Allstate Ins. Co. v. Cantrell Funeral Home, Inc.*, 506 F. Supp. 3d 529, 545 (E.D. Mich. 2020)). Thus, a court's inquiry under the fifth factor "must be fact specific, involving consideration of the whole package of options available to the federal declaratory plaintiff." *Flowers*, 513 F.3d at 562.

In this instance, the "package of options" available to NICO is much like the package available to the plaintiff-insurer in *Flowers*. In that case, the insurer of a therapy practice sought a declaration that it had no duty to extend coverage to one of the practice's therapists for claims brought against him in state court by a former client with whom he had sexual relations. *Id.* at 550. Analyzing the fifth *Grand Trunk* factor, the *Flowers* court listed the options available to a plaintiff-insurer seeking such a declaration under Kentucky law: (i) filing a declaratory action in state court; and (ii) filing an indemnity action in state court at the conclusion of the underlying state action. *Id.* at 562. While the first option is better when state law is unclear, it is not necessarily so when "Kentucky precedent provides clear guidance as to the resolution of the legal issue presented . . . ." *Id.* In the latter situation, "it [could not] be said that the district court was a clearly inferior forum to resolve the issue." *Id.* The second option, an indemnity action, is not a superior alternative to a district court declaratory judgment because the insurer "would have had

8

to wait until the liability issue in the case was resolved before determining its obligations . . . ." *Id.* Therefore, the *Flowers* court found that the final factor "counsel[ed] against exercising jurisdiction," but not to the extent that the district court abused its discretion in exercising jurisdiction. *Id.*

Accordingly, this factor weighs slightly against the exercise of jurisdiction. It would probably be preferrable that NICO bring this action in a Kentucky state court, which would be more adept at applying Kentucky's laws than this Court. Kentucky's law in this area, however, is well-established, and the weight of this factor alone does not defeat federal jurisdiction.

In sum, three factors weigh for jurisdiction, one against jurisdiction, and one is neutral. While a superior alternative possibly exists in the Kentucky state courts, it is not so clearly superior that one factor against should outweigh the three factors supporting jurisdiction. After all, "[a] district court should not deny jurisdiction to a plaintiff who has not 'done any more than choose the jurisdiction of federal rather than state court, a choice given by Congress.'" *Flowers*, 513 F.3d at 558 (quoting *State Farm Fire & Cas. Co. v. Odom*, 799 F.2d 247, 350 n.1 (6th Cir. 1986)). It is also important that, of the parties participating in this action, none opposes the exercise of jurisdiction. (*See* Pl.'s Br. 1-2; Bailey's Br. 1-2; SDC's Br. 1). Accordingly, this Court will exercise jurisdiction over NICO's declaratory judgment action.

### B. Motion for Summary Judgment

NICO has moved for summary judgment, seeking a declaratory judgment that the Policy does not require NICO to indemnify or defend SDC or Stinson. (Pl.'s Mot. Summ. J. 1). This motion is unopposed; the time to file a response brief has passed and none of the Defendants have chosen to do so. (Pl.'s Mot. Summ. J. 16) (indicating that NICO's motion was filed on April 16,

2025); LR 7.1(c) (responses are due within 21 days of the motion, while replies are due within 14 days of the response).

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] party moving for summary judgment may satisfy its burden [of] show[ing] that there are no genuine issues of material fact simply 'by pointing out to the court that the [non-moving party], having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.'" *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005) (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)). Similarly, the movant may meet its burden by offering evidence negating an essential element of the non-moving party's claim. *See Dixon v. United States*, 178 F.3d 1294, 1999 WL 196498, at *3 (6th Cir. 1999).

After the movant either shows "that there is an absence of evidence to support the nonmoving party's case[,]" or affirmatively negates an essential element of the non-moving party's claims, the non-moving party must identify admissible evidence that creates a dispute of fact for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). While the Court must view the evidence in a light most favorable to the non-moving party, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted). "The mere existence of a scintilla of evidence in support of the [moving party's] position [is] insufficient; there must be evidence on which the jury could reasonably find for the [moving party]." *Anderson*, 477 U.S. at 252.

"Even when faced with an unopposed motion for summary judgment, [a] district court cannot grant [the] motion . . . without first considering supporting evidence and determining

whether the movant has met its burden." *Byrne v. CSX Transp., Inc.*, 541 F. App'x 672, 675 (6th Cir. 2013) (citing *Delphi Auto. Sys., LLC v. United Plastics, Inc.*, 418 F. App'x 374, 380-81 (6th Cir. 2011); *Vt. Teddy Bear Co. v. 1-800 BEARGRAM Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101-02 (11th Cir. 2004)). A district court is not, however, required to conduct its own "probing investigation" of the record. *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 405 (6th Cir. 1992). "[A] court may rely on the moving party's unrebutted recitation of the evidence in reaching a conclusion that facts are uncontroverted and that there is no genuine issue of material fact." *Jones v. Kimberly-Clark Corp.*, 238 F.3d 421, 2000 WL 1800475, at *3 (6th Cir. 2000) (citation omitted).

The interpretation of insurance contracts is a matter of law and, in the absence of factual disputes, may be determined on summary judgment. *See McFerrin v. Allstate Prop. & Cas. Co.*, 29 F. Supp. 3d 924, 929 (E.D. Ky. 2014); *see also Ky. Emps.' Mut. Ins. v. Ellington*, 459 S.W.3d 876, 881 (Ky. 2015) (citation omitted); *Kemper Nat'l Ins. Cos. v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 871 (Ky. 2002) (citations omitted). Under Kentucky law, the party seeking to establish coverage bears the burden of doing so. *Secura Ins. Co. v. Gray Constr., Inc.*, 717 F. Supp. 2d 710, 714-15 (W.D. Ky. 2010) (citing *N. Am. Accident Ins. Co. v. White*, 80 S.W.2d 577, 578 (Ky. 1935)), *modified on clarification* (July 12, 2010). The first step is interpreting the relevant insurance contract. *Stone v. Ky. Farm Bureau Mut. Ins. Co.*, 34 S.W.3d 809, 810-11 (Ky. App. 2000). "The primary object in construing a contract . . . is to effectuate the intentions of the parties." *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 384 (Ky. App. 2002) (citations omitted). The contract "must be construed as a whole, giving effect to all parts and every word in it if possible." *Id.* (citation omitted); *see also Sun Life Ins. Co. v. Taylor*, 56 S.W. 668, 668 (Ky. 1900) ("In construing a contract, the whole must be taken together, in order to

11

determine the intention of the contracting parties."). The intentions of the parties are discerned from the four corners of the contract. *Cantrell Supply*, 94 S.W.3d at 384 (citations omitted). When there is an absence of any ambiguities, the terms are enforced as written. *McMullin v. McMullin*, 338 S.W.3d 315, 320 (Ky. App. 2011) (citing *Whitlow v. Whitlow*, 267 S.W.2d 739, 740 (Ky. 1954)).

The Kentucky Supreme Court has set forth two cardinal principles of insurance contract interpretation: "(1) the contract should be liberally construed and all doubts resolved in favor of the insureds; and, (2) exceptions and exclusions should be strictly construed to make insurance effective." *Ky. Farm Bureau Mut. Ins. Co. v. McKinney*, 831 S.W.2d 164, 166 (Ky. 1992) (citations omitted). As the Kentucky Supreme Court has explained:

> The rule of strict construction against an insurance company certainly does not mean that every doubt must be resolved against it and does not interfere with the rule that the policy must receive a reasonable interpretation consistent with the parties' object and intent or narrowly expressed in the plain meaning and/or language of the contract.

*St. Paul Fire & Marine Ins. Co. v. Powell-Walton-Milward, Inc.*, 870 S.W.2d 223, 226 (Ky. 1994); *see also Stone*, 34 S.W.3d at 811 ("[T]he terms should be interpreted in light of the usage and understanding of the average person." (citation omitted)).

In this instance, the Policy indicates that only vehicles listed in the policy are covered under its terms. (Pl.'s Mot. Summ. J. Ex. 3, at 9). The only vehicles listed in the Policy's schedule of covered vehicles are a 2006 Chrysler Town & Country and a 2017 Nissan Altima. (Pl.'s Mot. Summ. J. Ex. 3, at 11). Amendments indicate that the Policy was subsequently extended to cover a 2013 Dodge Grand Caravan minivan, a 2015 Dodge Grand Caravan minivan, a 2017 Kia Soul hatchback, and a 2016 Nissan Altima sedan. (Pl.'s Mot. Summ. J. Ex. 3, at 51, 54, 56-57, 64). At the time of the accident, Stinson was driving a Chevrolet Blazer SUV, which is neither listed in

12

the scheduled vehicles nor had the Policy been extended to cover this vehicle. (Compl. Ex. 2, at 3).

There are some exceptions to the restriction of coverage to only listed vehicles. The Policy's "Business Auto Coverage Form" reads, in part:

> 2.  But, if Symbol **7** is entered next to a coverage in Item Two of the Declarations [the chart titled "Schedule of Coverages and Covered Autos"], an "auto" you acquire will be a covered "auto" for that coverage only if:
>     a.  We already cover all "autos" that you own and it replaces an "auto" that you previously owned that had that coverage; and
>     b.  You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

(Pl.'s Mot. Summ. J. Ex. 3, at 19). Stinson's personal vehicle clearly does not fit within this exception. First, SDC did not "acquire" the personal vehicle owned by Stinson. (Compl. Ex. 2, at 3). Second, there is no indication that SDC ever indicated to NICO that it wanted Stinson's personal vehicle covered under the Policy. Accordingly, this exception does not apply.

Another exception extends coverage to vehicles not owned by SDC or listed in the Policy. It provides in relevant part:

> If Covered Autos Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Covered Autos Liability Coverage:
> . . .
> 3.  Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:
>     a.  Breakdown;
>     b.  Repair;
>     c.  Servicing;
>     d.  "Loss"; or
>     e.  Destruction.

(Pl.'s Mot. Summ. J. Ex. 3, at 19). Again, Stinson's personal vehicle does not fit this exception. There is no indication that her vehicle temporarily replaced any of SDC's covered vehicles.

13

Because Stinson's personal vehicle is not covered by the Policy, NICO is neither required to indemnify nor defend Stinson or SDC in the state court action. The Policy makes clear that coverage is only extended to those who are "insureds" and states:

> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."
> . . .
> We have the right and duty to defend any "insured" against a "suit" asking for such damages . . . . However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" . . . to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Covered Autos Liability Coverage Limit of insurance has been exhausted by payment of judgments or settlements.

(Pl.'s Mot. Summ. J. Ex. 3, at 19). Insureds are defined, in relevant part, as: (1) the policy holder for any covered vehicle; and (2) anyone who, with the insured's permission, uses a covered vehicle that the insured owns, hires, or borrows, except the owner of that hired or borrowed auto. (Pl.'s Mot. Summ. J. Ex. 3, at 19-20).

In this instance, Stinson was not the policy holder. She may have been using a covered vehicle with SDC's permission, albeit implied permission, because she was on an errand for a SDC client. This could be construed as using a vehicle that SDC had borrowed with its permission, as running client errands was presumably within the bounds of Stinson's employment with SDC. Stinson, however, was the owner of that borrowed vehicle and therefore is excepted from the Policy's definition of "insured." As Stinson was not an insured when the accident occurred, NICO has no duty to defend or indemnify Stinson or SDC for Bailey's claims stemming from this accident. Accordingly, NICO's motion for summary judgment is granted.

14

    **C.**    **Motion for Default Judgment**

NICO has also moved for default judgment against Stinson. (Pl.'s Mot. Default J., DN 30). Because summary judgment has been granted in favor of NICO against all Defendants in this action—including Stinson—the motion for default judgment is moot.

### III.    CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1. Plaintiff's Motion for Summary Judgment (DN 28) is **GRANTED**.

2. Plaintiff's Motion for Default Judgment (DN 30) is **DENIED AS MOOT**.

3. The Clerk shall strike this matter from the active docket.

Greg N. Stivers, Judge
United States District Court
November 19, 2025

cc:    counsel of record

15